J. W. WATSON and others v. COMMISSIONERS OF PAMLICO.

*Annexing Territory to Old County—Taxation.*

Where a county is enlarged by the annexation of new territory, the property thus brought within the corporate limits will be subject to taxation to discharge the pre-existing indebtedness of the old corporation.

(*Currituck* v. *Dare,* 79 N. C., 565 , *Manly* v. *Raleigh,* 4 Jones Eq., 370,. cited and approved.)

APPLICATION for an Injunction heard at Chambers, Fall Term, 1879, of PAMLICO Superior Court, before *Gudger, J.*

Upon the hearing the court granted an order that the defendants be perpetually enjoined from levying and collecting taxes to pay certain debts, mentioned in the opinion, and the defendants appealed.

*Messrs. Caho, Manly* and *Gilliam & Gatling,* for plaintiffs ·

In the absence of legislative provision, the annexed territory is not liable for the old debt of the county. Dill. Mun. Corp., § 128 ; *Currituck* v. *Dare,* 79 N. C., 565. Defendants have no power to levy the tax unless the same had been conferred by statute. *Com'rs* v. *Clarke,* 73 N. C., 255 ; *Wade* v. *Com'rs,* 74 N. C., 81 ; Cooley Const. Lim., 487. Plaintiffs had no voice in creating this debt and are therefore not liable. *Draining Co.* v. *Hooper,* 2 Metc., 350 ; Cooley, 493.

*Messrs. Grainger & Bryan,* for defendants :

Where territory is annexed to a county, it becomes a part of it for all purposes, and the rule of absolute uniformity in taxation is applicable. Cooley on Taxation, 180 ; Burroughs,. 51 ; and where territory is taken from an indebted county it is relieved of the debts of such county in the absence of legislative provision to the contrary, Dill. Mun. Corp., §

2

128; 92 U. S. Rep., 307; *Currituck* v. *Dare,* 79 N. C., 565. And the converse must be true on principle. *Manly* v. *Raleigh,* 4 Jones Eq., 370; Dillon, § 126; 8 Ohio, 285; 13 Mo., 400. Legislature has absolute control of corporations. 11 Ired., 558; Cooley, 231; Dillon, § 126.

SMITH, C. J. The county of Pamlico, as laid off and defined by the act of February 8th, 1872, was constituted out of detached portions of Craven and Beaufort counties, and when formed was "invested with all the rights, privileges and immunities of other counties in the state." There are two provisos contained in section two as follows: "That this bill for the formation of said county, together with the obligation to pay its proportionate share of the debt of Craven and Beaufort counties, shall be submitted to the qualified voters of the territory to be formed into a new county for adoption or rejection," and again " that if a majority of the votes cast in that portion of Beaufort county, proposed to be cut off, shall be against the new county, it shall not form a part of the same."

The popular vote given in the territory detached from Beaufort was against annexation, and the county was consequently formed entirely from the territory severed from Craven. Upon its organization, the stock in the Atlantic and North Carolina railroad company held by Craven, and its public debt, as required by section ten of the supplementary act of February 10th, 1872, were apportioned between those counties. Acts 1871–'72, chaps. 132 and 182. Subsequently, on application of the inhabitants of Goose Creek Island township, (a portion of the part of Beaufort which had rejected annexation) the general assembly passed the act of February 16th, 1874, and authorized the separation and transfer when ratified by the qualified voters resident on the island, and provided for an election to be held to determine the popular will. Acts 1873–'74, ch. 152.

The election was held, and the proposed transfer to Pamlico was approved and ratified.   The act contains no provision in reference to the assumed indebtedness of the county of Pamlico, and its corporate authorities have proceeded to levy a tax upon the newly acquired territory as upon the rest of the county to meet its general liabilities.   The action is brought on behalf of the tax-payers of Goose Creek Island to restrain the collection of any taxes levied upon them or their property therein, to meet other than the current and ordinary expense of county government, and especially the indebtedness transferred from Craven.

It is manifest that the adverse vote of the electors, in that part of Beaufort originally included in the boundaries of the proposed new county, finally disposed of the question of its severance and transfer and rendered the act in this regard nugatory and inoperative for any future purpose without the aid of further legislation.   It is equally clear that the transfer of Goose Creek Island made dependent on, and being approved by, the inhabitants entitled to vote, in the absence of any authoritative declaration of the legislative will on the subject, must be determined upon general principles and well settled usages prevailing in such cases.

In the case of *Com'rs of Currituck* v. *Com'rs of Dare*, 79 N. C., 565, the court cites with approval the doctrine laid down in 1 Dill. Mun. Corp., §123, and in support of which many authorities are referred to in these words : " So in Massachusetts it has been held that if a new corporation is created out of the territory of an old corporation, or if *part of its territory or inhabitants is annexed to another corporation,* unless some provision is made in the act respecting the property and existing liabilities of the old corporation, the latter will be entitled to all the property and be solely answerable for all the liabilities."

Thus as the transferred territory loses all claim to share in the property belonging to the corporation from which it

is taken, and is relieved of the indebtedness resting upon the latter, so it incurs the liabilities and shares in the property of the corporation to which it is attached, and is equally subject to assessment and taxation for that purpose. Nor is the validity of legislation followed by such consequences dependent upon the will and assent of any of the people to be affected by it, but rests in the sound discretion of the law making power.

"Not only (we quote from the same author) may the legislature originally fix the limits of the corporation, but it may, unless specially restrained in the constitution, subsequently annex, or authorize the annexation of, contiguous or other territory, and this without the consent, and even against the remonstrance of the majority of the persons residing in the corporation or on the annexed territory. And it is no constitutional objection to the exercise of this power of compulsory annexation, that the *property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing indebtedness*, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the legislature to determine."

So in *Manly* v. *City of Raleigh*, 4 Jones Eq., 370, the plaintiffs residing in the territory embraced in the act enlarging the boundaries of the city, sought relief from the "burdens which had accumulated in the shape of a debt and to the onerous taxes" incident to the city government, which they would incur by the annexation, and it was declared that the bill showed no equity and it was dismissed. "To establish a county or incorporate a town is a legislative act," say the court, and "consequently the general assembly may exercise this power whenever and in such manner, as in its opinion the public good will thereby be promoted, unless the time, manner or other circumstances of the act violates some provision of the constitution." And again: "The general assembly has power to incorporate a town, or to ex-

*tend* or contract the limits of one already incorporated, whenever, in its opinion, public policy requires it to be done."

If the personal property removed from one county to another by the owner, or territory withdrawn from the jurisdiction of one taxing power and placed under that of another with defined territorial limits in which they are included, does not become liable to the burdens of its public indebtedness and to an assessment therefor, it would escape the obligations of both—a result neither in itself equitable, nor just to others, nor permitted by the law. The plaintiffs can derive no support to their claim of exemption from the decision in *Currituck* v. *Dare, supra,* since the liability of all the taxable property in the county of Dare, as constituted, to assessment to meet its obligations is recognized, while so much as is taken from Currituck by the express terms of the enactment is additionally charged with its ratable share of the debt of the latter incurred for internal improvement.

If no direct equivalent or consideration of pecuniary value was received by the inhabitants of Goose Creek Island for this legal assumption of the debt of Pamlico, it would in no manner change the consequences of its becoming part of the county, and yet those inhabitants acquire the advantages and privileges possessed by others resident in the county, and among them the use of the public buildings, perhaps erected from the proceeds of former tax-levies, and whatever may be the value of the assigned railroad stock, a participation in the benefits of that fund. The liability, however, as we have said, does not spring from considerations of this kind, but is the natural and legal result of annexation itself. The plaintiffs have no equity in their claim for exemption from taxes properly imposed upon others, and the injunction ought to have been refused. There was error in the order for its issue and it must be reversed. Let this be certified.

Error.                                        Reversed.