C. S. HOLTON v. THE BOARD OF COMMISSIONERS OF MECKLENBURG COUNTY.

*Constitutional Law—Taxes—Roads.*

1. Courts never declare statutes unconstitutional and void, unless they plainly conflict with the Constitution. If any construction can be given to their provisions which will make them consistent with the constitution it will be done, and every reasonable doubt will be given in favor of their validity.

2. The provisions of the Constitution requiring taxes to be uniform, apply to the levying and payment of taxes, and not to the distribution of the revenue arising therefrom.

3. *Quære?* Does a difference in the method of the payment of taxes properly levied, come within any inhibition of the Constitution.

4. The Legislature passed an act authorizing a county to be divided into suitable road districts, but providing that no incorporated city or town should be embraced in such district. It further provided that a tax might be levied for road purposes on all the property in the county, including that situated in cities and towns, and that the revenue arising therefrom should be divided among the road districts, not according to the number of miles in such district, but according to the amount of work needed on such roads. It was further provided that any taxpayer might discharge his road tax by working on the roads within the district where the tax was charged. In an action by the resident of a city to restrain a collection of the tax on his property; *It was held*, 1st. That the tax was uniform. 2nd. That the tax could be levied on the property situated in cities and towns. 3rd. That the taxpayer in the city could pay his tax by his labor.

Motion for an INJUNCTION, heard by *Shipp, Judge,* at Chambers in Charlotte, on December 4, 1885.

The statute (Acts 1885, ch. 134), entitled "An act relating to roads and highways," relates to and embraces only the county of

Mecklenburg. It embraces and systemizes the whole subject of ordinary public roads, bridges, ferries and fords in that county; it declares what these are and shall be; how they shall be established and constructed; how they shall be changed, extended or discontinued; how they shall be kept in repair; and how labor and money for such purposes shall be provided.

A leading and distinctive purpose of the statute is, to give to the justices of the peace in the several townships, "supervision and control of the public roads in their respective townships," and to this end, those of each township are incorporated as the "board of trustees" thereof. These boards of trustees are required to have stated, and may have special, meetings, and to keep a record of their proceedings.

They may sue and be sued, and exercise other corporate powers conferred. They are required to examine from time to time into the condition of the roads with which they are charged, and make report thereof to the Judge of the Superior Court.

They were further required, on the first of May, or within four weeks next thereafter, in the present year, "to divide their respective townships into suitable road districts, and annually thereafter may make such alterations therein as they may deem proper, and cause a brief description thereof to be made on the township records, and also furnish each supervisor with a plat of his road dietrict."

They are also required to elect a supervisor of roads for each road district, and it is made his duty to do many things prescribed by the statute, such as ordering out for duty such persons as may be liable to work on the roads, direct and supervise their work, take care of necessary tools, &c., &c.

The statute requires every able bodied male person, within the ages of eighteen and forty-five years, except persons permanently disabled in the military service of the State, to do four days labor in each year on the highways, under the direction of the supervisor of the road district in which he resides, unless he shall choose to pay three dollars in lieu of such labor. The money

so paid, and fines and penalties prescribed, when incurred and collected, must be applied by the supervisor to the use of the roads in his district.    Among other things, it is provided as follows:

"Section 17. That the commissioners and board of justices of the peace of the respective counties in this State, are hereby authorized to levy at the June session of their board annually, for road purposes, not less than seven tenths of a mill, nor more than two mills on the dollar, and the chairman of the county commissioners shall place the same on the tax list of the current year, to be included in, and collected in the annual taxes: that if the trustees of any township shall deem an additional road tax necessary, they shall determine the per centum to be levied upon the taxable property of their respective townships, and shall certify the same in writing to the board of county commissioners and justices of the peace at their June session, who may levy a special tax, not exceeding one mill on the dollar, and the commissioners and justices may levy and assess the same, on the taxable property of the township, and the same shall be collected as other taxes, and paid out as herein provided.

"Sec. 18. That the chairman of the board of county commissioners, immediately after the commissioners, at their annual session for that purpose, have determined the amount to be assessed for road purposes in their respective counties, shall give notice in some newspaper in general circulation in the county, of the *per centum* on each hundred dollars of the valuation so determined to be assessed in such county and *township*, and that the said tax may be discharged by labor on the roads under the direction of the supervisors of the several districts, and shall make out a list of the names of each taxpayer of the amount of the road tax with which each stands charged, and transmit the same to the supervisor of the proper district.

"Sec. 19. Any person charged with a road tax may discharge the same by labor on the public highways, within the district where the same is charged, within the time designated in the act,

at the rate of one dollar per day, and a ratable allowance per day, for any team, implement and material furnished by any person under the direction of the supervisor of such district, who shall give to such person a certificate specifying the amount of tax so paid, and the district and township wherein such labor was performed, which certificate shall in no case be given for any greater sum than was charged against such person, and the sheriff shall receive all such certificates as money in the discharge of said road tax. The township trustees in determining the division of this fund, shall be governed not by the miles of road in each district, but by the necessities of the roads, the convenience of getting material, the quantity of material necessary to make substantial repairs, &c., and thus make a just and equitable division of said fund between the several districts."

And in §32 it is, among other things, provided that "*The township trustees shall not lay off any portion of any incorporated city, town or village, in any road district.* The tax levied by the county commissioners and justices of the peace under this act, shall be levied in accordance with the Constitution of this State, and shall apply to all cities and towns."

Charlotte township embraces the incorporated town of that name. The board of trustees of that township properly divided the same, except so much thereof as was embraced within the corporate limits of the town, into suitable road districts, and appointed a supervisor in each of them.

No road district embracing the town of Charlotte was established, nor any provision made for, or in respect to, the streets or highways within the limits of the town. On the first Monday in June, of the present year, the defendant commissioners, in conjunction with the justices of the peace of the county above named, in addition to the other taxes levied for general county purposes, levied a tax of ten cents on the one hundred dollars valuation of all property, both real and personal, taxable in the county, including the property of all persons who were citizens of the town of Charlotte, including that of the plaintiff,

28

who was a citizen thereof.  A proper tax list, embracing the tax so levied, was made out and placed in the hands of the defendant sheriff for collection.

The plaintiff brought this action in behalf of himself and all other taxpayers of the town of Charlotte, against the defendants, commissioners of the county named, and the sheriff of that county.  He alleges, and it appears sufficiently, that he has paid all the taxes owed by him, except the tax levied against him as above stated for road purposes, that the tax list for such tax is in the hands of the defendant Potts, sheriff, &c., and he is about to proceed to collect the same as directed by his co-defendants.  He insists, that at all events, so much of the statute mentioned, as authorized the levy of such tax upon the property of the citizens of Charlotte, is in violation of the Constitution and void.  It is not insisted that the whole tax levied by the defendant commissioners exceeds the Constitutional limitation upon the power of taxation, but that first, the tax for road purposes is not uniform, and secondly, that it is unequal: first, in that the citizens of Charlotte are required to pay such taxes, when no part thereof is to be expended within the limits of the town, in constructing and keeping in repair the streets and highways therein; and secondly, in that the taxpayers, outside of the town limits, may pay taxes due from them respectively in labor at one dollar per day, while citizens of the town cannot do so.

The Court at Chambers, granted an injunction restraining the defendants from collecting the tax until the hearing of the action upon the merits, and they, having excepted, appealed to this Court.

*Mr. W. P. Bynum*, for the plaintiff.
*Messrs. Burwell & Walker*, for the defendants.

MERRIMON, J., (after stating the facts).  Unquestionably, if the Court can give the provisions of the statute in question effect, by any reasonable interpretation of them, consistent with the

Constitution, it is its obvious duty to do so. Courts never declare statutes and statutory provisions in conflict with the Constitution, and therefore void, except where they are plainly so. They are presumed to be valid, and every reasonable doubt is to be given in favor of their validity. The Court cannot allow plausible arguments and speculative opinions to overthrow them, and thus defeat the legislative intent.

The first assigned ground of objection to the statute is clearly untenable. The tax in question was levied just as were all the other county taxes, for an ordinary and lawful county purpose, and by the same uniform rule, upon the *ad valorem* assessment of all the taxable property in the county. The purpose was to raise county revenue, to be expended in constructing, amending and keeping in repair, the public roads, bridges, ferries, and fords in the county. The statute, in effect, apportions the revenue raised by the tax, to the township—not necessarily to the road district—from which it was collected. This distribution could not destroy the uniformity of the tax levy by which it was raised. We cannot see any reason why the apportionment of the revenue, as indicated, should affect the uniformity of the tax levy at all, much less why it should destroy and render it void. The intention seems to have been to allow the tax payers and the people of the township, paying the money, to have, as nearly as practicable, the direct benefit of it. There is no constitutional provision that forbids this to be done.

The second ground of objection assigned is, that the statute violates the Constitution in that it authorizes a tax on account of the public roads to be imposed upon the property of the tax paying citizens of the town of Charlotte, and requires that no part of the revenue raised from such tax, and indeed that no part of the revenue of the county for purposes of roads, shall be expended within the corporate limits of that town, for like purposes.

It is contended that this provision is unequal and unjust.

The Constitution does not prohibit such inequality. While it is very true, that there must be equality and uniformity in imposing the burden of taxation upon property subject to it, so that each tax payer shall pay the same proportionate tax on the same species of property taxed, that every other tax payer pays, and the tax must be levied *ad valorem*, this rule of equality does not apply to the distribution of the revenue arising from such taxation. It is to be observed, that the objection here, is not to the method or rule observed in levying the tax—the levy, as we have seen, was by uniform rule, and regular. But the objection is to the distribution of the revenue to be raised by the tax imposed.

Now, the necessities, wants, purposes and interests of government are such, that it is practically impossible to distribute its revenues equally among those who pay taxes. Indeed, this cannot, in most instances be approximately done, not even to the localities from which most of it is taken. The State may, sometimes must, expend large sums of money in one section, for proper and necessary purposes, while it expends very little in another, when perhaps the greater part of the taxes were paid by tax payers in the latter. This is an essential inequality, arising from the diversified and multiplied wants and necessities of government. Its very nature renders such inequality necessary. A constitutional provision forbidding it, would defeat, at all events greatly hinder, the purposes and aims of government.

Such inequality prevails in the State government, and as well, and for the like reasons, in the county government. It may turn out, oftentimes does, that a large part of the county revenues must be expended in one locality in the county, to build a road, construct a bridge, erect a work-house or the like, essential to the general and common good of the people of the county.

The statute under consideration undertakes to distribute the revenue arising from the taxes for the purposes of roads, to the townships—not necessarily in equal parts to the several road districts—from which it is to come. This seems to be a distinctive

purpose. The taxes collected, and all fines and penalties, are to be so distributed and applied, following up the general and leading purpose of the statute, to give "the supervision and control of the public roads" to the justices of the peace respectively, of the several townships. Hence, it is provided in §19, that "the township trustees, in determining the division of this fund, shall be governed, not by the miles of roads in each district, but by the necessities of the roads, the convenience of getting material, the quality of material necessary to make substantial repairs, etc., and thus make a just and equitable division of said funds between the several districts." And to effectuate this purpose the better, it is provided in §17, "that the chairman of the board of commissioners shall make out a list of the names of each tax payer, of the amount of the road tax with which each stands charged, and transmit the same to the supervisor of the proper district." The tax payer and the sum of money thus due from him, being thus designated, he may discharge the sum of money so due "by labor on the public highways within the district where the same is charged, within the time designated in this act, at the rate of one dollar per day," etc. But if the tax due is not thus discharged in labor, the township trustees will distribute the cash fund, when it shall be collected by the sheriff, to the several road districts, in the township as above indicated.

What we have said serves to show that the inequality complained of, is not such as comes within any constitutional inhibition, and the statute is not void on that account. It is not necessary to advert to the advantages the tax payers of Charlotte must gain by the expenditure of the revenue arising from the taxes they are required to pay, in improving the roads that lead directly into their town, and the further advantage they have in being exempt from performing four days labor on the public roads, that the tax payer living in a road district must perform, or pay three dollars in cash. This does not affect the merits of the objection just disposed of.

The third ground of objection is, that the tax payer outside of the corporate limits of Charlotte, may discharge the taxes due

from him in labor, while the tax payer in town cannot. The objection is unfounded. The tax payer in Charlotte has the right to, and may, discharge the tax due from him in labor on the roads, just as may any other like tax payer residing outside that town. As we have seen, the revenue arising from the tax is to be applied in the township from which it comes. To this end, a list of the tax payers, and the tax due from each, must be sent to the supervisor of the proper road district, as above indicated. The taxes so designated, are to be distributed and apportioned by the township trustees to the several road districts, as provided in the last clause of §19, of the statute above recited. The tax due from the tax payers in Charlotte will be thus apportioned to a road district in Charlotte township, and each may discharge the tax due from him, by labor on the roads in the district to which his tax may be assigned. The language of the statute (§19), is, "Any person *   *   *   *   * may discharge the tax due from him on the public highways within the district where the same is *charged*," &c. When the tax due is apportioned by the township trustees, the tax "is charged," in the sense of the statute, in the road district to which it is so apportioned. If the township trustees have not so apportioned the taxes due, they ought to do so, so that the taxpayer may exercise his right to discharge the tax due from him in labor. This interpretation, it seems to us, is not unreasonable, and it gives just effect to the statute. If it be said, that the distribution of the revenue arising from the tax is cumbersome, it must be said in reply, that the statute is not clear in much of its details. But apart from what we have said, it is questionable how far a difference in the method of the payment of taxes properly levied, comes within any inhibition of the Constitution. We express no opinion in that respect.

We think the Court erred in granting the injunction, and the order granting it must be reversed. To that end, let this opinion be certified to the Superior Court according to law.

Error.                                                      Reversed.