MARTIN COUNTY v. WACHOVIA BANK AND TRUST COMPANY.

(Filed 10 September, 1919.)

1. **Constitutional Law— Counties— Highways —Bridges —Bonds — Taxes— Statutes.**

     A legislative enactment, ch. 53, Public-Local Laws 1919, authorizing the issue of bonds by two adjoining counties to build a bridge and its approaches through a swamp in one of them, over a stream dividing them, specifying that the bonds shall not exceed the actual cost of said bridge and road, and apportioning the issuance three-fourths to the one and one-fourth to the other, is not in contravention of our State Constitution, though the bridge and its approaches specified in the act are within the county authorized only to issue bonds in the smaller amount. Rev., sec. 2695, amended by ch. 185, Laws 1919; ch. 312, Laws 1919.

2. **Counties— Highways— Bridges— Necessary Expense— Vote of People— Constitutional Law.**

     The Legislature may authorize adjoining counties to issue bonds in certain proportions for the building of a bridge across a dividing stream, and the validity of the bonds, being for a necessary county expense, does not depend upon their issuance being approved by the vote of the people.

3. **Counties— Highways— Bridges— Necessaries — Statutes — Constitutional Law.**

     Whether a county is benefited by the building of a bridge and approach over a stream between it and an adjoining county is a question for the Legislature to determine, and not reviewable by the courts.

4. **Counties— Highways— Bridges— Public Benefits— Taxation— Expense— Statutes—Constitutional Law.**

The construction and maintenance of roads and bridges are of public benefit, the expense of which the Legislature may cast upon the State at large or upon territory specially and immediately benefited, though the work may not be within a part of the total area attached.

5. **Counties—Highways—Bridges—"Approach"—Taxation—Bonds—Statutes —Constitutional Law.**

Where by legislative enactment adjoining counties are authorized to issue bonds to build a bridge over a dividing stream, apportioning the amount thereof each county may issue, and also for the "approach" to the bridge through the swamp lands in one of the counties, the "approach" provided for is to be considered and dealt with as a part of the bridge, in passing upon the constitutionality of the act.

6. **Constitutional Law—Counties—Statutes—Highways—Bridges— Taxation —Bonds—Local Acts.**

A public-local act authorizing two adjoining counties by joint action to build and construct a bridge over a dividing stream as already surveyed and laid out, with an approach thereto in one of the counties, and for the purpose to issue bonds in given proportions not to exceed the cost of the work, and to levy a tax to pay interest on the bonds and provide a sinking fund, is not such local, private or special legislation as is forbidden by constitutional amendment (sec. 29, Art. XI), the necessary part of the act being to authorize a special tax.

7. **Constitutional Law— Counties— Statutes— Taxation— Limitation —"Approval"—Sinking Fund.**

Chapter 103, Laws 1917, as amended by ch. 185, Laws 1919, and ch. 312, Laws 1919, relating to the issuance of bonds and the levy of taxes for county road and bridge purposes, as also ch. 53, Public-Local Laws 1919, as to Martin and Bertie counties, meet the constitutional requirement of "special approval of the General Assembly" required to levy a tax beyond the constitutional limitation; and a provision limiting the amount of the bonds to the "actual cost" of a bridge and its "approach" is not a prohibition against issuing the bonds before the work is done, for whatever sum that may remain over such cost may be invested in the sinking fund provided in the statute.

APPEAL by defendant from *Connor, J.,* at Chambers, 14 August, 1919; from MARTIN.

This is a controversy submitted without action upon facts agreed, and involves the validity of $150,000 bonds proposed to be issued by the county of Martin under authority of Public-Local Laws 1919, ch. 53, entitled "An act to authorize the boards of commissioners of Martin and Bertie counties to build a bridge over the Roanoke River at Williamston, N. C., and for other purposes."

The defendant put in the highest bid for this issue, $160,669.50 and accrued interest to date of delivery, which bid was accepted by the

county of Martin, but the defendant now declines to accept and pay for said bonds upon the ground that the bonds are not legal and binding obligations of said county. The court upheld the validity of the bonds and adjudged that the county of Martin should execute and deliver the same to the defendant and that the defendant should pay said bid and costs of action. Appeal by defendant.

*Dunning & Moore, H. W. Stubbs, John W. Hinsdale, Jr., Reed, McCook & Hoyt and W. Henry Hoyt for plaintiff.*
*Manly, Hendren & Womble for defendant.*

Clark, C. J. This is a controversy submitted upon an agreed case, without action, relating to a proposed issue of $150,000 of bonds of Martin County for the purpose of paying the county's share of the cost of building a bridge at Williamston over the Roanoke River, which divides Martin and Bertie counties, including the causeway or continuation of the bridge through the swamp on the Bertie side to the highlands.

It is provided that the entire work is to be constructed by the two counties jointly, at their joint expense, with Federal and State aid. The proposed road or approach on the Bertie side will run through swamps and other lowlands, and is necessary to the use of the bridge and practically a part of it. The bonds were awarded by Martin County to the appellant as the highest bidder on 30 June, 1919. The appellant is willing to comply with its bid, provided the county can lawfully issue these bonds and levy sufficient taxes to pay them. This proceeding was instituted in order to determine this question.

The defendant bank refuses to take and pay for said bonds upon the ground that they are not legal because "the act authorizing such bond issue violates the constitutional amendment, Art. II, sec. 29, which declares that the Legislature shall not pass any local, private, or special act relating to ferries. or bridges; and for the further reason that the Legislature had no power under the Constitution to authorize Martin County to issue bonds to pay a part of the costs of building the road in Bertie County under the exclusive control of Bertie."

The court below adjudged that the bonds are valid obligations of the county; that the county is authorized to levy a sufficient tax to pay the principal and interest of the bonds without regard to the tax limit prescribed by the State Constitution, and that the proceeds of the sale of the bonds may be used by Martin County "in constructing the road approaching the bridge in the county of Bertie whether said road be wholly in the county of Bertie or partly in the county of Bertie and partly in the county of Martin."

The plaintiff relies upon three different statutes for authority to issue the bonds and to levy sufficient taxes to pay principal and interest thereof, i. e.:

1. Chapter 53, Public-Local Laws 1919, entitled "An act to authorize the board of commissioners of Martin and Bertie counties to build a bridge over the Roanoke River at Williamston and for other purposes."

2. Chapter 103, Laws 1917, amending Rev., 2696, as amended by ch. 185, Laws 1919, which is now secs. 137-143, ch. 69, Cons. Stat.

3. Chapter 312, Laws 1919, entitled "An act to enable all counties to provide funds to pay the cost of constructing or improving roads with Federal aid, and to pay the cost of maintaining such roads."

Under each of these three acts Martin County is authorized to issue bonds for road and bridge purposes and to levy sufficient taxes to pay such bonds.

The first act is applicable only to Martin and Bertie counties and specifically authorizes them "by joint action and agreement to build and construct a bridge over the Roanoke River at Williamston, as the same has already been surveyed and laid out, and to build and construct the road leading from the bridge on the Bertie side to the highlands of Bertie County"; authorizes each county to issue bonds for this purpose, the total amount not to exceed "the actual cost of said bridge and road," the Martin County bonds not to exceed $150,000 and the Bertie County bonds not to exceed $50,000, and further authorizes each county to levy a "sufficient tax to pay the bonds issued by it."

The second act provides in substance that "any county in the State" may build a public road or a bridge in the county, and any two counties may jointly build a highway bridge over a stream which divides them, and may apportion the cost between themselves in such proportion as they may agree upon; but the cost must not exceed 2 per cent of the assessed valuation of the taxable property in the two counties. County bonds may be issued for such roads or bridges in an amount not exceeding "the actual cost" thereof; and a "sufficient" county tax may be levied to pay the bonds.

The third act provides that any county may issue its bonds to pay its share of the cost of constructing or improving public roads in the county with Federal or State aid or both, and may levy a "sufficient" tax to pay such bonds; and that the term "road" as used in the act includes bridges and culverts in all cases where they constitute a part of the road which is to be so constructed or improved. The act provides, however, that certain portions of it shall not be enforced in 31 counties named therein (which do not include Martin) unless it is adopted by the voters at an election.

Pursuant to the first act, which for convenience may be called the "Special Act," Martin and Bertie counties having previously taken

appropriate action for building at their joint expense the bridge and road prescribed in that act, Martin County now proposes to issue the $150,000 of bonds in question to pay its share of the cost. It appears upon the face of the special act that the road or approach referred to therein is to be almost wholly in Bertie.

It may be noted here that the bridge proper across the river is in Bertie for the boundary of Martin County is the low-water mark on the south side of the river. This appears from ch. 4, Laws 1729; 25 St. Records, 212; 2 Rev. Stat., 164, which boundary is recognized by the subsequent acts creating Edgecombe County out of Tyrrell, Laws 1741, ch. 7; 23 St. Records, 164; 2 Rev. Stat., 124; the act creating Halifax county out of the territory of Edgecombe, Laws 1758, ch. 13; 23 St. Records, 496; 2 Rev. Stat., 133; and finally, the act creating Martin County out of Halifax and Tyrrell, Laws 1774, ch. 32; 25 St. Records, 976; 2 Rev. Stat., 145. Indeed, it has been the usual procedure by the act establishing new counties that where a river or other stream is the dividing line said river has remained within the limits of the county from which the new county has been taken. But counties are merely instrumentalities and agencies of the State government. It has been enacted that when a crime has been committed on a boundary, a water-course which lies wholly in another county, either county has jurisdiction of the offense (Rev., 234), and that a grand jury may be authorized to indict for offenses committed in another county (*S. v. Lewis,* 142 N. C., 626); and that as to civil matters not only the Legislature can change the boundaries at will with or without provision that the annexing county shall pay a part of the debt of the county from which the territory was taken (*Mills v. Williams,* 33 N. C., 558; *Comrs. v. Comrs.,* 95 N. C., 189; *Comrs. v. Comrs.,* 79 N. C., 565; *Watson v. Comrs.,* 82 N. C., 17); but the establishment of the boundary being a political question the Legislature, even after taxes are assessed, can decide where the boundary is (even though erroneously in fact) and direct to which county the tax from the disputed territory shall be paid. *R. R. v. Washington,* 154 N. C., 333.

The act of the Legislature here has authorized Martin County to issue $150,000 bonds as its just contribution to the entire cost of the bridge and its approaches from its beginning in Martin to the highlands in Bertie. The Legislature was doubtless moved to so enact by the representatives of that county in the General Assembly. As the bridge itself and the long approach through the swamp are in Bertie County almost the entire expense but for the apportionment authorized in the act by agreement of the commissioners would have fallen upon Bertie, though doubtless the greatest proportion of the benefit would have accrued to the county of Martin. The bridge, therefore, would not have been con-

structed but for the apportionment in the act which has been approved by the county commissioners of the two counties, and which was doubtless made in consequence of their agreement before the act was passed. The act, however, is merely permissive as to the amount of bonds each county can issue, and not mandatory.

It was entirely within the power of the Legislature to have built the bridge solely at the cost of the whole State, as in the numerous cases of State bonds issued to build railroads, though no part of the bridge and its approaches would have been upon the soil of the other 98 counties contributing to its erection. The act of the Legislature authorizing the two counties in the vicinity and apportioning the contribution of Martin County at not more than $150,000, and of Bertie at not more than $50,000, was not forbidden by any provision of the State Constitution. Being a necessary expense, these counties under the authority of the Legislature, can issue the bonds without a vote of the people. *Herring v. Dixon,* 122 N. C., 424, and cases cited thereto in the Anno. Ed.

Revisal, 1318, subsec. 29, provides: "When a bridge is necessary over a stream which divides one county from another the board of commissioners of each county shall join in constructing or repairing such bridge and the charge thereof shall be defrayed by the counties concerned in proportion to the number of taxable polls of each." In *Bridge Co. v. Comrs.,* 151 N. C., 216, it was held that this provision would apply irrespective of whether the division line between counties ran up the middle of the stream or whether the stream lay, as is not unusual (and as in this instance), entirely in one of the counties. In *McPeeters v. Blankenship,* 123 N. C., 651, where the boundary ran up the middle of the stream between Yancey and Mitchell counties, it was held that the commissioners of Yancey could not build the bridge without the joinder of the commissioners of the other county but "should have applied to the Legislature for an act authorizing the county of Yancey to construct the bridge at its sole expense." It therefore appears that the Legislature might have authorized the county of Martin to build this bridge entirely at its own expense. Certainly, if the Legislature could direct, as it does under Rev., 1318, subsec. 29, that the expense should be divided between the counties concerned "in proportion to the number of taxable polls of each," it has the power to provide for any other method of apportioning the expense. In this case, ch. 103, Laws 1917, amended by ch. 185, Laws 1919, has provided that "any two counties may jointly build a highway bridge over a stream which divides them and may apportion the cost between them in such proportion as they may agree upon." Chapter 53, Public-Local Laws 1919, apportioning $150,000 to Martin was evidently proposed in consequence of such agreement.

It has never been questioned that the construction of a bridge over

a stream dividing two counties is a necessary and public purpose for which each county may constitutionally raise money. *Bridge Co. v. Comrs.,* 151 N. C., 215; *Mills v. Comrs.,* 175 N. C., 215. There is ample authority also in other jurisdictions that "It is not necessary that any part of a highway or bridge be within the territorial limits of the political subdivision on which the burden of its construction is imposed by the Legislature, provided such political subdivision is benefited thereby." *S. v. Williams,* 68 Conn., 131; 48 L. R. A., 465, affirmed 170 U. S., 304; 13 Ruling Case Law, title "Highways," sec. 13; 4 Ruling Case Law, title "Bridges," sec. 10, and it is for the Legislature and not for the courts to determine what property is benefited under such circumstances, unless the legislative action is palpably arbitrary and a plain abuse. *Houck v. Drainage District,* 209 U. S., 245; *Byram v. Marion County,* 145 Ind., 240. To the same purport *Taylor v. Comrs.,* 55 N. C., 141; *Holton v. Mecklenburg,* 93 N. C., 430; *Wood v. Oxford,* 97 N. C., 227; *Elizabeth City v. Comrs.,* 146 N. C., 539; *S. v. Williams, supra; Mobile v. Kimball,* 102 U. S., 691; *Kelly v. Pittsburg,* 104 U. S., 78; *Thomas v. Gay,* 169 U. S., 265; *Transit Co. v. Kentucky,* 199 U. S., 202-204; *S. v. Marion County,* 170 Ind., 595; *Duval County v. Jacksonville,* 36 Fla., 196; *S. c.,* 29 L. R. A., 416; *S. v. Atkin,* 64 Kansas, 174, affirmed 191 U. S., 207; *S. v. Edmundson,* 89 Ohio State, 92; *Thurston v. Caldwell,* 40 Okla., 206.

The rule to be deduced from these authorities may be thus summed up: The construction and maintenance of roads and bridges is a matter of general public concern. The whole body of the people of this State is benefited by them. The Legislature may cast the expense of such public works upon the State at large, or upon territory specially and immediately benefited, even though the work may not be within a part of the total area attached.

The decisions in *Comrs. v. State Treasurer,* 174 N. C., 141, and *Comrs. v. Boring,* 175 N. C., 105, may be distinguished from this case in that Martin County is not issuing bonds in behalf of any other political subdivision, and the road and bridge in question is an essential part or adjunct of the bridge which begins in Martin County. The proportionate part of the costs, i. e., three-fourths, is a fair estimate doubtless of the proportional part of the benefit which will accrue to that county from the construction of the bridge, including the causeway through the swamp on the Bertie side (which is an indispensable part of the bridge), having been enacted at the instance of the representatives of Martin County in the General Assembly and approved by the commissioners of that county. The road on the Bertie side is an "approach" to the bridge, and indeed is essentially a part of the bridge, for at places there are large arches as an outlet for the overflows of the river, which

are not infrequent. These approaches are in law, as well as in fact, a part of the bridge. *Brown County v. Keya Paha County,* 88 Neb., 117; 4 Ruling Case Law, title "Bridges," sec. 2.

Besides, the apportionment in the act is merely permissive as to the amount of bonds each county may issue, and being within the powers of the General Assembly is not reviewable by us.

We have discussed this proposition first for it seems to be the real defense set up in this case. As to the other exception, that the special act, Public-Local Laws 1919, ch. 53, is within the constitutional prohibition of local, private or special legislation and forbidden by the Constitutional Amendment, sec. 29, Art. II, that matter has been fully discussed and conclusively settled by *Brown v. Comrs.,* 173 N. C., 598; and *Mills v. Comrs.,* 175 N. C., 215.

That amendment provides: "The General Assembly shall not pass any local, private, or special act of legislation . . . authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets or alleys, relating to ferries or bridges. . . . Any local, private or special act or resolution passed in violation of the provisions of this act shall be void."

Chapter 53, Public-Local Laws 1919, provides that the board of commissioners of Martin and Bertie are authorized by joint action to build and construct a bridge over the Roanoke River at Williamston as the same has already been surveyed and laid out, and to build and construct a road leading from the bridge on the Bertie side to the highlands of Bertie County, and that to raise funds for that purpose the commissioners of Martin are authorized to issue bonds not to exceed $150,000, and the commissioners of Bertie not to exceed $50,000, with provisions as to issuing the bonds and levying taxes to pay the interest and to provide a sinking fund for the payment of bonds at maturity. The only necessary part of this act is the legislation authorizing a special tax. Even if the primary purpose of the act was not to authorize the bonds and tax and if the provision authorizing the building of the bridge was unconstitutional the latter is mere surplusage, and the bond and tax provisions would be valid and the work could be done under the implied power and under the general statutes above set out.

In *Brown v. Comrs., supra,* ch. 456, Public-Local Laws 1917, "authorized and directed" the board of commissioners of a county named in the act to issue bonds "for road purposes" in a certain township named therein, and provided for a sufficient annual tax in the township to pay the principal and interest of the bonds. The court held that this act was primarily a statute to provide for raising revenue for road purposes, and therefore was not within the constitutional prohibition. *Brown, J.,* said: "An analysis of the act shows that its primary purpose

3—178

is to authorize the sale of bonds for road purposes in North Cove Township and to require the levying of a tax to pay the interest and principal of the bonds. . . . It only provides the *means* for constructing and repairing them. . . . Speaking of such legislation as affected by a constitutional provision the Pennsylvania Court, *In re Sugar Notch Borough,* 192 Penn. St., 349, says: 'The restrictions of the Constitution apply to direct legislation, not to the incidental operation of statutes, constitutional in themselves, upon other subjects than with those with which they directly deal.' So in this case, the bond issue being the direct legislation, the fact that it provides that the proceeds of the bonds are to be used for road purposes will not bring it within the prohibition of the constitutional amendment."

In support of this proposition the court referred (page 600) to the absolute necessity of special legislation authorizing county and township bond issues and taxes for roads. The object of the amendment was not to inhibit the Legislature from granting such permission in cases where, under our Constitution, legislative permission is necessary, but it was intended to prevent taking up the time of the General Assembly and filling up the volumes of statutes in authorizing the laying out of highways and other local matters which the county commissioners were fully authorized and empowered to act upon without legislative permission.

In *Mills v. Comrs., supra,* ch. 575, Public-Local Laws 1917, was held not to be in conflict with above-cited amendment to the Constitution, sec. 29, Art. II. The act there considered authorized the people of the county named in the act to issue bonds "for the purpose of building bridges across the Catawba River" jointly with another county named, and to levy a special tax to pay the bonds. *Hoke, J.,* placed the decision upon the ground above stated in *Brown v. Comrs.* He said: "It is well understood that our General Assembly at session after session was called on by direct legislation to authorize a particular highway or street or to establish a bridge or ferry at some specified place. . . . The Legislature in these cases was in fact called on to usurp, or rather to exercise, functions which were more usually and properly performed by the local authorities, and it was in reference to local and special and private measures of this character that these amendments were adopted, and, as stated in *Brown's case, supra,* it was never intended to prohibit legislation authorizing the raising of proper funds by the sale of bonds or by taxation required for the public good, though such funds should be for improvements in some fixed place or in restricted territory determined upon by local authorities in pursuance of general laws on the subject."

This is a clear conception and statement of the purpose and the appli-
cability of sec. 29, Art. II, of the Constitution. We could not add to it
or make any change therein without making it less clear. It cannot be
improved upon. The Brown and Mills cases were, we think, rightly
decided, and are reaffirmed. They have been cited with approval in
*Parvin v. Comrs.,* 177 N. C., 510.

The same view is taken in *Morrill v. Supervisors,* 112 N. Y., 585, and
*Bridge Co. v. Attica,* 119 N. Y., 204. In *Robertson v. Board of Super-
visors,* 112 Miss., 54, the Court held that an act providing for the issu-
ance of bonds to pay for the improvement of public roads did not violate
a section of the Constitution of that State almost identical with sec. 29,
Art. II, of our Constitution, for the reason that it did "not provide for
the laying out, opening, altering and working roads and highways, but
for the raising of revenue with which to pay for the working of roads
and highways, the method by which they have been or are to be laid out,
opened, altered and worked, being governed by the general laws relating
thereto." The same principle was enunciated in *In Re Sugar Notch
Borough,* 192 Penn. St., 349, already quoted in the citation from the
opinion in *Brown v. Comrs., supra.*

More than 150 statutes, authorizing issue of bonds for construct-
ing roads or bridges in certain counties, townships or road districts
therein named were passed at the last session in reliance upon the Brown
and Mills cases. Under the authority of these statutes many hundreds
of thousands of bonds have been issued or are about to be issued, and
contracts have been let or are about to be let for the construction of
roads and bridges in all parts of the State. It is of the highest im-
portance therefore that the authority of those cases shall be sustained.

The primary purpose of the special Martin County act above was to
authorize the bonds and the levy of a tax to pay the principal and
interest thereof. Under their power to undertake public improvements
involving a necessary expense Martin and Bertie could have built the
bridge and approaches and road thereto without any act of the Legis-
lature, and could have issued bonds for that purpose and by agreement
apportioned the total cost between them. The only really necessary
legislation was to authorize a special tax to pay the bonds. *Comrs. v.
McDonald,* 148 N. C., 125.

Lastly, it is contended in the defendant's brief that in *R. R. v. Chero-
kee,* 177 N. C., 65, the Court held that a general act giving every county
or certain named counties optional authority to levy special taxes was
unconstitutional and that a "special act" was necessary, but that a con-
trary decision was made in *Parvin v. Comrs., ib.,* 508. The Court in the
*Cherokee case* divided, the dissenting opinion expressing the view that
the legislative authority to levy a special tax under Constitution, Art.

V, sec. 6, did not require a "special act" for that purpose, but only the "special approval" which could be given as well by a general act empowering any or all counties to do so. *Parvin v. Comrs.* did not, as the defendant contends in his brief, expressly overrule the *Cherokee case,* but ·distinguished it by pointing out that it was based on a statute enacted in 1913, prior to the Constitutional Amendment. In the *Parvin case* the Court held that a general statute passed since the amendment, i. e., ch. 284, Laws 1917, providing that the "county commissioners of any county, for the purpose of laying out, opening, etc., the public roads and bridges of any county, may order an election tò take the sense of the qualified voters of the county upon the question of issuing bonds for that purpose," was sufficient. This is the latest utterance of the court.

The Constitution, Art. V, sec. ·6, requires the "special approval" of the Legislature to exceed the limitation of taxation for even necessary purposes. If the *Cherokee case* were construed to prohibit this approval being given by a general act, and Constitution, Art. II, sec. 29, prohibits a special act, this would prevent such approval being given in any case.

We think, therefore, that the special act (ch. 53, Public-Local Laws 1919) relied upon as authority for the bonds does not conflict with the Constitutional Amendment, Art. II, sec. 29, which prohibits local, private or special legislation in certain cases. We are also of opinion that the two general acts (ch. 103, Laws 1917, as amended by ch. 185, Laws 1919, and ch. 312, Laws 1919) referred to in the beginning of this opinion also satisfy the constitutional requirement of "special approval of the General Assembly" authorizing the levy of a tax beyond the constitutional limitation.

The provision limiting the amount of the bond issue to the "actual cost" of the bridge or road is not a prohibition against issuing bonds before the work is done. The amount of bond issue may be based upon the estimate of the cost made either before or after the work is done. Any other construction of the statutes might make it impossible for the county to proceed with the work, for contractors usually insist that the financial arrangements be made before the work is begun. Should it happen that the work can be let at a less total cost than the amount received from the bond issue, the surplus can be invested in the sinking fund required to pay off the bonds at maturity.

The Roanoke River, as is well known, is the only one in the entire Union of its length between the falls and its mouth, and of no greater width, that is, not spanned by any bridge at all. In this State there are numerous public bridges across the French Broad, the Catawba, the Yadkin, the Cape Fear, the Neuse and the Tar rivers where they are wider than the Roanoke. Particularly is this so as to the bridges across

the Neuse at New Bern and the Pamlico at Washington, and the rail-road bridge across Albemarle Sound is 5½ miles long. It is patent that the construction of this bridge, and indeed of bridges at divers other points over the Roanoke, is a public necessity not only for the people of the fertile country on each side of that stream, but will be to the great benefit of the entire State.

After the fullest consideration of all the arguments adduced the judgment below is

Affirmed.