Allen, J.
The plaintiff in error, whom for convenience we will call the plaintiff in the course of this opinion, claims that Sections 7575 and 7600, General Code, are unconstitutional, and that therefore the levy and the apportionment of the 2.65 mills tax pursuant to these sections must be enjoined. The sections are as follows:
“Section 7575. For the purpose of affording the advantages of a free education to all the youth of the state, there shall be levied annually a tax of fifteenth [fifteen] hundreths of one mill on the grand list of the taxable property of the state, to be collected as are other state taxes and the proceeds of which shall constitute the ‘educational equalization fund,’ and an additional tax of two and sixty-five hundredths mills, the proceeds of which shall be retained in the several counties for the support of the schools therein.”
“Section 7600. After each semiannual settlement with the county treasurer each county auditor shall immediately apportion school funds for his county. Each city school district and each ex *291 empted village school district shall receive the full amount of the proceeds of the levy of two and sixty-five hundredths mills provided in Section 7575, General Code, in the given school district. The proceeds of such levy upon property in the territory of the county outside of city and exempted village school districts shall be apportioned to each school district and part of district within the county outside of city and exempted village school districts on the basis of the number of teachers and other educational employees employed therein, and the expense of transporting pupils as shown by the reports required by law, and the balance according to the ratio which the aggregate days of attendance of pupils in such districts, respectively, bears to the aggregate days of attendance of pupils in the entire county outside of exempted village and city school districts.
“The annual distribution attributable to teachers and employees shall be according to the following schedule : Thirty-seven and one-half per centum of the salary of each teacher or educational employee receiving a salary of not less than eight hundred dollars and a like percentage of the compensation paid to each person giving instruction in trade or technical schools, extension schools, night schools, summer schools and other special school activities, but not to exceed nine hundred dollars for any teacher or educational employee or other such person. In the case of a superintendent under the provisions of Section 4740 distribution shall be made of the given per centum multiplied by a fraction which represents the part of his working time not given to supervisory duties.
*292 “The annual distribution attributed to expense of transportation of pupils shall be fifty per centum of the personal service expense incurred in such transportation.
“No school district shall be entitled to receive any portion of the said funds in any year until the reports of numbers, salaries and qualifications of teachers employed and aggregate days of attendance and expense of transportation of pupils have been made as required by law. The school tax levied by boards of education and collected from the several districts or parts of districts in the county shall be paid to the districts from which it was collected.
“Money received from the state on account of interest on the common school fund shall be apportioned to the school districts and parts of districts within the territory designated by the auditor of state as entitled thereto on the basis of the total enumeration of youth of school age in each whole district entitled thereto, and the enumeration of youth of school age residing in parts of districts so entitled, and all other money in the county treasury for the support of common schools and not otherwise appropriated by law, shall be apportioned annually to the school districts and parts of districts in the county in the proportions in which such districts and parts of districts are entitled to share in the distribution of the levy of two and sixty-five hundredths mills provided in Section 7575 of the General Code.”
Plaintiff urges that these sections are contrary to the state and federal Constitutions, in that they violate the constitutional provisions with reference to the power to tax, and also violate consti *293 tutional limitations upon the power to lejgislate. Plaintiff urges the following four propositions in support of his claim:
“First. The tax here created violates the constitutional provision that laws shall be passed taxing by a uniform rule.
“Second. The tax sought to be levied although not administered by the state is taken out of Silver Lake village school district into other taxing subdivisions of which that district is not a part, devoted to purposes foreign to the purposes of that district, and hence to purposes which are not legitimate purposes of taxation.
“By reason of the foregoing proposition the enforcement of the proposed tax accomplishes a taking of property contrary to the provisions of the Constitution.
‘ ‘ Third. The legislation under consideration violates the provision of the federal Constitution that a state shall not ‘deny to any person within its jurisdiction the equal protection of laws,’, and violates the similar requirement of the Ohio Constitution that governmental functions be exercised for the equal protection and benefit of all of the people.
“Fourth. Although the sections under consideration will be conceded to be legislation of a general nature, they are not, as the Constitution requires, uniform in operation throughout the state.”
Taking these objections in their order, we will first inquire whether the law is unconstitutional on the ground that it violates Section 2, Article XII of the Constitution of Ohio, the pertinent portion of which reads: “Laws shall be passed, taxing by a uniform rule. * * *”
*294 In this case the tax in question is actually levied upon every school district in the state. Section 7575, General Code, provides that—
‘ ‘ There shall be levied annually a tax of fifteenth [fifteen] hundredths of one mill on the grand list of the taxable property of the state * * * and an additional tax of two and sixty-five hundredths mills. * * *”
It is plaintiff’s contention, however, that this levy, as a matter of fact, is not made in city school districts and in exempted village school districts, because the full amount of the proceeds of the levy within these districts is received by those very districts after the levy has been made, while other school districts in the county receive an apportionment of the balance of the levy within the county in varying amounts, according to their school expenses and attendance of pupils.
Plaintiff therefore claims that although the levy is made in every school district within the state, since the proceeds of the levy are at once appropriated to the city and exempted village school districts, and are apportioned to other school districts in each county only after this first appropriation to the city and exempted village school districts, as to certain school districts it is a levy in form only and not in fact— that the levy actually falls upon such districts as Silver Lake village school district and not upon city or exempted village school districts. Plaintiff therefore claims that the law does not tax by a uniform rule.
Plaintiff’s position seems to be that if the distribution is not uniform, the tax is not laid by a uniform rule.
*295 Since the tax, however, actually falls upon each school district in the state, the levy itself is uniform, whatever may be said of the distribution. There is considerable authority to the effect that so long as a tax is uniformly laid the Legislature may appropriate the proceeds of that tax by a rule that is not uniform, in case the appropriation is reasonable and made in pursuance of a valid and legitimate state purpose.
To the effect that a constitutional provision that taxes shall be uniform applies only to their levy and assessment, and not to the expenditure and distribution of money raised by the tax, are the following cases: Kerr v. Perry School Township, 162 Ind., 310, 70 N. E., 246; Holton v. Board of Com’rs of Mecklenburg County, 93 N. C., 430; and Mitchell v. Lowden, Governor, 288 Ill., 327, 123 N. E., 566.
The syllabus in the Kerr case holds:
“Section 1, Article 10, of the state Constitution, requiring uniformity and equality in the rate of assessment and taxation .of property, deals only with the rate of assessment and taxation within the taxing district in which the particular tax is levied, and does not control the expenditure of money arising out of such assessment and taxation.”
The second proposition of the syllabus of the Holton case reads:
“The provisions of the Constitution requiring taxes to be unif orm, apply to the levying and payment of taxes, and not to the distribution of the revenue arising therefrom.”
The following were the facts in the Holton case: the Legislature passed an act' authorizing a county to be divided into suitable road districts, but pro *296 viding that no incorporated city nor town should be embraced in such district. It further provided that a tax might be levied for road purposes on all the property in the county, including that situated in cities and towns, and that the revenue arising therefrom should be divided among the road districts, not according to the number of miles in such district, but according to the amount of work needed on such roads. In an action by the resident of a city to restrain collection of the tax on his property, it was held: (1) That the tax was uniform. (2) That the tax could be levied on the property situated in cities and towns.
Moreover, it is established in this state that a tax law is uniform in operation if the tax is uniformly laid. Proposition 4 of the syllabus in State, ex rel. Donahey, Auditor of State, v. Edmondson, County Auditor, 89 Ohio St., 98, 105 N. E., 269, 52 L. R. A. (N. S.), 305, Ann. Cas., 1915D, 934, is a specific holding upon this point. In this case, page 114 of 89 Ohio St., on page 275 of 105 N. E. (52 L. R. A. [N. S.], 305, Ann. Cas., 1915D, 934), Judge Donahue makes the following statement:
“It is further claimed that this act is not of uniform operation throughout the state, but it is apparent from the language of the act itself that this contention cannot be sustained. It provides a uniform levy upon all property in the state for the purpose named in the act itself.”
This comment by Judge Donahue applies exactly to the section creating the tax objected to by plaintiff in this action, and providing for its levy.
Under the act questioned in the Edmondson case, one county might well receive far less than it had *297 collected for the tax, and as the act is actually applied a number of counties in the state do receive less than they have collected for the tax.
The fact that under operation of the statute here questioned certain school districts always receive the full proceeds of the 2.65 mills tax, while others do not, does not, therefore, make the tax not uniform. Whether the distribution provided for in Section 7600 is within the power of the Legislature, under Section 2, Article VI of the Constitution, we shall take up more fully later. At this time, and upon plaintiff’s first contention, the court holds that the levy here created does tax by a uniform rule.
Plaintiff next contends that as the money raised in Silver Lake village school district is taken out of that district and used in other school districts in Summit county, it is employed for a purpose foreign to the school district of Silver Lake village, and hence for a purpose which is not legitimate in taxation.
Section 2, Article VI of the Ohio Constitution, provides as follows:
“The General Assembly shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the slate. * * *”
This declaration is made by the people of the state. It calls for the upbuilding of a system of schools throughout the state, and the attainment of efficiency and thoroughness in that system is thus expressly made a purpose, not local, not municipal, but state-wide.
With this very state purpose in view, regarding the problem as a state-wide problem, the sovereign *298 people made it mandatory upon the General Assembly to secure not merely a system of common schools, but a system thorough and efficient throughout the state.
A thorough system could not mean one in which part or any number of the school districts of the state were starved for funds. An efficient system could not mean one in which part or any number of the school districts of the state lacked teachers, buildings, or equipment.
In the attainment of the purpose of establishing an efficient and thorough system of schools throughout the state it was easily conceivable that the greatest expense might arise in the poorest districts; that portions of great cities, teeming with life, would be able to contribute relatively little in taxes for the support of schools, which are the main hope for enlightening these districts, while districts underpopulated with children ■ might represent such taxation value that their school needs would be relatively over supplied.
Presumably the instant law was drawn to meet just such a situation. It is expressly designed to appropriate the full amount of the 2.65' mills extra school levy raised within the given district to the impoverished school districts, the city districts, the exempted village districts, which have more children than can adequately be provided for under the former system of levies, and the balance to other districts in proportion to the number of their teachers, employees, expense of transportation, and number of attending pupils. In the attainment of that purpose, not by exemption from taxes but by use of the taxes within the district, the Legislature fol *299 lowed a method well calculated to secure the attainment of a legitimate and proper state purpose.
As this purpose is a state and not a local purpose, it is one for which it is legitimate to tax Silver Lake village school district, as well as every other school district in Summit county, or in the state of Ohio. Silver Lake village school district shares in the advantages which will be derived from uniform excellence of schooling in Summit county and in the state of Ohio. The state purpose of having efficient schools throughout the borders of Ohio is a purpose not foreign to Silver Lake village school district nor to any other school district, but is one which, seen in the proper light, belongs to every school subdivision in Ohio.
The fact that this money is appropriated, not for a local purpose, but for a legitimate state purpose, disposes of the plaintiff’s contention that the law takes property without due process, and also disposes of his contention that because the tax is spent outside of his district he is denied the equal protection of the laws. He receives the equal protection of the laws when he is taxed for a legitimate state purpose by a tax which is levied equally upon every district in the state.
Upon this specific point of denial of equal protection of the laws, 12 Corpus Juris, p. 1154, under the heading “School Taxes,” reads as follows:
“School taxes which have been sustained as not denying the equal protection of the laws include * * * general taxes levied by the Legislature on the whole state; and this applies to such general taxes, even though the money derived therefrom is appropriated among the various subdivisions of the *300 state in different proportions from those in which it was paid by them.”
Sawyer v. Gilmore, 109 Me., 169, 83 Atl., 673, which was decided by the Supreme Court of Maine in 1912, is exactly in point with the instant case upon the proposition that the common school fund was distributed unequally. In the Sawyer case each scholar, on the average, in unorganized townships, received $19 during one of the years in question for school purposes, while the amount per scholar throughout the state, including scholars in incorporated places, for the same year, averaged only $2.52.
We reproduce the five paragraphs of the syllabus in the Sawyer case, which fully set forth the facts and the legal basis for the decision:
“1. That the method of levying the tax cannot be assailed. Section 8 of Article IX of the State Constitution, which requires that ‘all taxes upon real or personal estate, assessed by authority of this state shall be apportioned and assessed equally according to the just value thereof,’ is fully met. No property escapes, no locality escapes, and the rate is uniform. There is no discrimination.
“2. That as a matter of fact the Legislature has made more generous provision for the education of children in unorganized townships than in incorporated places, as each scholar on the average in the townships received for the year ending April 1,1911, $19 for school purposes, while the amount per scholar throughout the state averaged only $2.52.
“3. That the fact that this common school fund is distributed to the towns one-third according to the number of scholars and two-thirds according to val *301 uation, instead of all according to number of scholars, does not of itself render the act unconstitutional. Inequality of assessment is necessarily fatal, inequality of distribution is not, provided the purpose be the public welfare.
“4. The particular method of distribution rests in the wise discretion and sound judgment of the Legislature. The Constitution provides no regulation in this matter and it is not for the court to say that one method should be adopted in preference to another. We are not to substitute our judgment for that of a co-ordinate branch of the government working within its constitutional limits.
“5. That there is no force in the contention that because the town receives back from the state two-thirds of what it has paid to the state, therefore it can relieve itself from local taxation for other purposes than schools, and can devote the proceeds, when received, to the support of paupers, or the maintenance of roads, or the running expenses of the town, thereby making the unorganized townships contribute toward these local charges.”
The plaintiff’s fourth and last contention Í3 that the sections under consideration are not uniform in operation throughout the state. Section 26, Article II of the Ohio Constitution, is as follows:
“All laws, of a general nature, shall have a uniform operation throughout the state. * * *”
That this law is one of a general nature cannot be contested. (State, ex rel. Wirsch, v. Spellmire, 67 Ohio St., 77, 65 N. E., 619.) If therefore it does not have a uniform operation throughout the state, it is clearly unconstitutional, unless it makes classifications which are reasonable. If the statute in question operates upon every person brought within the *302 relation and circumstances provided for, and in every locality where the condition exists, then by the long-established rule in Ohio it has uniform operation throughout the state. Assur, a Taxpayer, v. City of Cincinnati, 88 Ohio St., 181, 102 N. E., 702.
Now this law does operate equally upon all city and exempted school districts, and upon all other school districts and parts of districts within each county in the same condition or category. The law creates two categories, within one of which fall all city and exempted school districts, and within the other of which fall all other school districts and parts of school districts within the county, and within these two categories, or conditions, the act operates uniformly.
But plaintiff argues that the creation of these two categories is of itself a violation of Section 26, Article II of the Constitution; that is, that in providing two classes of beneficiaries from this 2.65 mills school levy, one class including city and exempted village school districts, and the other including all other school districts and parts of school districts within each county, the statute is plainly unconstitutional.
The provision of Section 26, Article II of the Constitution, however, does not bar classifications which are neither arbitrary nor unreasonable. State, ex rel. Yaple, v. Creamer, Treas., 85 Ohio St., 349, 97 N. E., 602, 39 L. R. A. (N. S.), 694.
The constitutional provision then does not limit the general power of the Legislature to apportion state taxes raised for state purposes in varying amounts throughout the state, provided the apportionment be reasonable.
*303 Could there be a more reasonable classification than that provided for in this act — that school districts should receive aid in varying proportions according to their needs; that city and exempted village school districts, which experience has shown are crippled for lack of school funds, should be preferred ; and that all other school districts should then share in the balance of the fund according to the number of teachers and school employees, expense of transportation, and attendance of scholars within their respective districts? This kind of classification is so reasonable, in fact, that that part relating to attendance of pupils is similar to the basis of apportionment in many statutes throughout other states.
24 Ruling Case Law, 593, par. 46, reads:
“The Legislature must distribute the school funds uniformly. It cannot select an arbitrary basis for the disbursement of the funds, but must do so on some just basis relating either to the scholastic population or the general population of each locality or the amount of taxes paid, or some such equal and uniform basis of distribution. So the taking of funds to build high schools in certain localities without establishing a uniform system has been held discriminatory and unconstitutional. The statutes of many jurisdictions require the school fund to be apportioned on the basis of the number of children of school age in a particular district or municipality.”
To the same effect is 35 Cyc., p. 824, note 4, and cases cited.
After all, what the plaintiff complains of here is the inequality of the burden; that his district under this 2.65 mills levy pays more than the *304 city school district, or the exempted village school district, and possibly more in proportion to what it receives than other districts which are not city or exempted village school districts. But that fundamental inequality exists in every taxation. The law does not require that each man shall pay the same amount to support government. It requires that each man shall pay in proportion to his ability. This statute complies with that principle. The Legislature in these two sections, in the exercise of its sworn duty to the schools, lays the state tax equally upon taxable property in Ohio and apportions the tax, not arbitrarily, not unreasonably, but wisely, in an effort to equalize education and raise its standard throughout the state. Such a theory must commend itself to every citizen.
The plaintiff has cited to the court a number of cases which we do not consider necessary to discuss in detail. They all arise either under constitutional provisions different from those applying here, or else differ from the instant case so greatly in their facts that they cannot be said to be decisive of this specific question.
The court has examined all of these cases carefully. None of the cases cited by plaintiff from other jurisdictions involved a school tax, nor were they similar in facts, except Bromley v. Reynolds, 2 Utah, 525.
The Bromley ease, while similar upon the facts, is far from being decisive upon the law. That holding arose under the territorial government of Utah. It was made at a time when the organic act of the territory, far from giving the Legislature such a definite mandate with regard to schools as is laid *305 down in our Constitution, said not one word as to the power of the Legislature to provide for common schools. Organic Act, Utah Compiled Laws, 1876.
Coming to the Ohio cases cited, Root v. Board of Education, 52 Ohio St., 589, 41 N. E., 135, and Fields v. Commissioners of Highland County, 36 Ohio St., 476, were cases in which certain property of the counties in question was exempted from the levy. Wasson v. Commissioners, 49 Ohio St., 622, 32 N. E., 472, 17 L. R. A., 795, involved the question of the power of the Legislature to authorize the taxation of one county only, for a state purpose. Board of Education v. State, 51 Ohio St., 531, 38 N. E., 614, 25 L. R. A., 770, 46 Am. St. Rep., 588, raised the question whether a Legislature could force a board of education to tax a certain township in order to pay a former county treasurer a sum of money claimed to have been paid by mistake, which claim was contested by the board of education. Hixson v. Burson, 54 Ohio St., 470, 43 N. E., 1000, was a case in which legislation for the construction and repair of highways, manifestly constituting a law of a general nature, applied in terms to one county only. State, ex rel. Wirsch, v. Spellmire, 67 Ohio St., 77, 65 N. E., 619, simply holds that a school law is general in its nature, and must therefore be uniform in its operation throughout the state — a proposition with which we are quite in accord unless the law makes a classification which is reasonable, in which case, as shown above, it need not operate with absolute uniformity. In every case cited where the section in dispute was declared unconstitutional by the court, the levy provided for was either local only or not uniformly laid throughout the state.
*306 The plaintiff, moreover, has failed to cite any law-providing for a tax levy uniformly laid throughout the state, as in the instant case, which has been held unconstitutional under Section 26, Article II of the* Constitution, because of the fact that the funds raised were unevenly distributed in pursuance of a legitimate state purpose.
That the expenditure of public funds for a private purpose is unlawful has been held in this state. (Auditor of Lucas County v. State, ex rel. Boyles, 75 Ohio St., 114, 78 N. E., 955, 7 L. R. A. [N. S,], 1196.) But the sovereign people have not considered the giving of education to be a private purpose. The existence of an intelligent and enlightened people is the basis of national prosperity and political integrity, and the system by which we endeavor to educate and enlighten the coming generations is rightly made by law a matter of supreme public concern.
After all, the statute in question is merely an extension of the proposition that a man who sends his children to private educational institutions may be required to help support public schools for other children, or that the man who has no children may be taxed to support schools for other men’s families. It is no gratuity, no private gift to an individual, nor to a particular district, to support the schools of the state. It is a contribution to the public, and not to a local purpose; a contribution to the community’s very life, which must be exacted of every citizen.
The judgment in each case is therefore affirmed.

Judgments affirmed.

Marshall, C. J., Wanamaker, Robinson, Jones, Matthias and Bay, JJ., concur.